Filed 11/12/25  P. v. Nyako CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>SPENCER NYAKO,<br><br>　　　Defendant and Appellant. | B337325<br><br>(Los Angeles County<br>Super. Ct. No. BA436141) |

APPEAL from an order of the Superior Court of Los Angeles County, Shelly B. Torrealba, Judge.  Affirmed in part; reversed in part; remanded with directions.

Christopher W. Stansell, Jennifer Peabody, and Sydney Banach, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

In 2017, Spencer Nyako (defendant) was convicted of attempted voluntary manslaughter (Pen. Code, §§ 664, 192, subd. (a))[1] and assault with a semiautomatic handgun (§ 245, subd. (b)).  He was sentenced to 34 years in prison, which was later reduced to 31 years.  In 2024, the trial court conducted a full resentencing pursuant to section 1172.75,[2] but declined to reduce defendant's sentence and reimposed the full 31-year sentence.  On appeal, defendant raises several claims of error, some of which have merit and necessitate remand.  Accordingly, we vacate the trial court's order and remand for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

#### I.    Underlying Crimes

In April 2015, defendant and three fellow Blood gang members confronted Eugene Cooley (Cooley), who was a member of a rival Crips gang, at a gas station in Crips territory.  One of the men in defendant's group demanded to know Cooley's gang

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    Effective June 30, 2022, section 1171.1 was renumbered section 1172.75, with no substantive change.  (Stats. 2022, ch. 58, § 12; *People v. Burgess* (2022) 86 Cal.App.5th 375, 378, fn. 2.)  For simplicity, we refer to the section by its current numbering.

2

affiliation.  Defendant shot Cooley as Cooley attempted to flee, but Cooley survived.  At trial, defendant testified that he shot Cooley because he believed Cooley was "going for a gun." Surveillance video cameras at the gas station captured the confrontation.

## II.    Charges, Conviction and Sentencing

The People charged defendant with attempted murder (§§ 664, 187).  The People also alleged that the attempted murder was premeditated, that defendant personally used a firearm (§ 12022.5, subd. (a)), that he personally inflicted great bodily injury (§ 12022.7, subd. (a)), and that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). The People further alleged that defendant had served two prior prison terms (§ 667.5, subd. (b)), one for his 2010 conviction for unlawfully possessing a firearm as a felon (former § 12021, subd. (a)(1)), and another for his 2012 conviction for felony evading (Veh. Code, § 2800.2, subd. (a)).

A jury acquitted defendant of attempted murder but convicted him of the lesser-included offense of attempted voluntary manslaughter (§§ 664, 192, subd. (a)), and the lesser-related offense of assault with a semiautomatic firearm (§ 245, subd. (b)).  The jury also found true the gang, firearm, and great bodily injury enhancements.  At a bifurcated proceeding, the trial court found the prior prison term allegations to be true.

The trial court sentenced defendant to an aggregate term of 34 years in state prison, comprised of the upper term of nine years for the assault with a semiautomatic firearm conviction, plus 10 years for the personal use of a firearm enhancement, plus 10 years for the gang enhancement, plus three years for the great bodily injury enhancement, plus two years for the prior prison

3

term allegations. The court imposed and stayed (pursuant to section 654) a one-third-the-midterm sentence for the attempted voluntary manslaughter conviction. Defendant was ordered to pay restitution, a $30 court facilities assessment under Government Code section 70373, a $40 court operations assessment under section 1465.8, and a $10 citation processing fee under section 1463.07.

## III.  Direct Appeal

On direct appeal from the judgment, this court affirmed the convictions but modified defendant's sentence to impose but stay the three-year enhancement for infliction of great bodily injury, and to impose an additional $30 court facilities assessment and $40 court operations assessment (so that assessments were imposed for each of the two convictions). (*People v. Nyako* (Oct. 29, 2018, B282785) [nonpub. opn.].)

## IV.  The Resentencing Proceedings

In December 2022, the California Department of Corrections and Rehabilitation (CDCR) identified defendant as an individual potentially eligible for resentencing.[3]

In July 2023, defendant, through counsel, filed a petition requesting a full resentencing on several grounds pursuant to section 1172.75, including requests, as pertinent here, (1) to strike the two, one-year prior prison term enhancements; (2) to strike some or all of the sentencing enhancements under section 1385; (3) to strike the gang enhancement under the newly

---

[3]  Although the record on appeal does not include any document from the CDCR, we infer the CDCR's action from the undisputed presence of enhancements eligible for dismissal under section 1172.75 as well as the trial court's unbidden setting of the matter for "judicial action" and appointment of counsel.

enacted Assembly Bill 333; and (4) to exercise its newfound discretion to stay, under section 654, the crime with the highest sentence. Subsequently, defendant filed a "resentencing memorandum in pro se" that argued that his originally imposed sentence had been erroneous.[4]

In its written opposition, the People agreed that defendant was entitled to have his two one-year prior prison term enhancements stricken under section 1172.75,[5] but opposed any further reduction of his sentence on the ground that he "remains a danger to public safety based on his violent behavior and poor performance while in state prison." To their filing, the People attached defendant's criminal record as well as a list of defendant's prison rule violations.

The court purported to conduct a resentencing hearing on March 18, 2024, but reimposed the same 31-year sentence. In declining to strike the two, one-year prior prison term enhancements, the court cited its finding that defendant "remain[ed] a danger to public safety and that his conduct establishes clear and convincing evidence that he is likely to commit a 'super strike' [felony offense] in the future in accord

---

[4] Defendant argued that his original sentence (1) had violated section 654; (2) had been invalid because the court had failed to state reasons for imposing consecutive sentences; and (3) improperly imposed a sentence under section 245, subdivision (b) because defendant had never been charged with that crime and because it was duplicative of the firearm enhancement. None of these arguments are relevant to the issues presented in this appeal.

[5] At the hearing on the petition, the People reversed course and opposed the striking of these enhancements.

with [section] 1172.75." In declining defendant's further requests for resentencing, the court found that "[d]ismissal of defendant's" firearm, gang and great bodily injury enhancements "would endanger public safety" and "create[] a strong likelihood that dismissing the enhancements would result in physical injury or other serious danger to others." In support of these findings of future danger to the public, the court cited (1) defendant's five rule violations while in custody, which included three theft-related violations, a four-on-one group attack on a prisoner in 2018, and a three-on-one group attack in 2022; (2) the absence of any rehabilitative conduct by defendant while in custody; and (3) the fact that CDCR had not recommended defendant for resentencing under section 1172.1 (formerly §§ 1170 & 1170.03).

## V.    Appeal

Defendant timely appealed from his resentencing.

### DISCUSSION

Enacted as part of Senate Bill 483, section 1172.75 declares "legally invalid" all one-year sentencing enhancements for serving a prior prison term except when the prior prison term was served for a "sexually violent offense." (§ 1172.75, subd. (a); Stats. 2021, ch. 728, § 3; Stats. 2022, ch. 58, § 12.) Once CDCR identifies a defendant as eligible for relief under this provision (§ 1172.75, subd. (b)), that defendant is entitled to a full resentencing at which time the court can reconsider all sentencing decisions under the law in effect at the time of resentencing. (§ 1172.75, subd. (d)(1)–(2); see also *People v. Espino* (2024) 104 Cal.App.5th 188, 193, 195, review granted Oct. 23, 2024, S286987; *People v. Green* (2024) 104 Cal.App.5th 365, 373.) We generally review sentencing decisions for an abuse of discretion (*People v. Moseley* (2024) 105 Cal.App.5th 870, 874),

6

but review subsidiary factual findings for substantial evidence (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143), and subsidiary questions of statutory interpretation de novo (*People v. Terwilligar* (2025) 109 Cal.App.5th 585, 595).

Defendant makes what boil down to six challenges to the trial court's order reimposing a 31-year sentence following the resentencing.[6]

The People concede error as to three of those challenges, and rightly so:

\-\- *Failure to strike the two, one-year prior prison term enhancements.* Section 1172.75 declares "legally invalid" all one-year prior prison term enhancements except those for "sexually violent offense[s]" (Welf. & Inst. Code, § 6600, subd. (b)). (§ 1172.75, subd. (a).) Because defendant's two priors are not "sexually violent offenses," they were legally invalid and should have been stricken. The trial court appears to have read subdivision (d)(1) of section 1172.75 as granting it authority to leave these legally invalid enhancements intact upon a finding "by clear and convincing evidence that imposing a lesser sentence would endanger public safety," but this provision deals with the overall sentence imposed upon resentencing after the legally invalid enhancements have been stricken; it does not authorize a legally invalid enhancement to remain in place.

\-\- *Failure to vacate the gang enhancement.* Assembly Bill No. 333 (2021-2022 Reg. Sess.) (AB 333) modified the gang

---

[6]     Defendant also challenges the trial court's calculation of his presentence custody credits (which would necessitate a corrected abstract of judgment), but this challenge is moot in light of our ultimate disposition that the case must be remanded for a new resentencing where presentence custody credits will be calculated anew.

7

enhancement by adding new requirements that did not previously exist. (*People v. Lopez* (2025) 17 Cal.5th 388, 395-396.) Because AB 333 retroactively applies to people, like defendant, who have been granted a resentencing hearing (*id.* at pp. 392-393), the trial court erred in not assessing whether the jury's findings in this case otherwise addressed the new requirements or whether the jury's failure to do so was harmless beyond a reasonable doubt. We reject defendant's invitation for *this court* to automatically reverse the gang enhancement. If the trial court finds the gang enhancement should be vacated, the People may elect to retry it under AB 333's new requirements.

　　-- 　*Imposition of repealed $10 administrative fee.* The abstract of judgment reflects that the trial court imposed a $10 administrative screening fee under section 1463.07 in November 2018. This is unenforceable because our Legislature in 2021 repealed that section and nullified prior fees imposed under that section. (§ 1465.9, subd. (a); Stats. 2021, ch. 257, §§ 34-35 (Assembly Bill No. 177 (2021–2022 Reg. Sess.).)

　　We now turn to the three remaining challenges.

## I.　　Imposition of the Upper Term Base Sentence

　　Defendant contends the trial court violated the Sixth Amendment as well as section 1170, subdivision (b)(2) when it reimposed the nine-year upper base term for his assault with a semiautomatic firearm conviction without relying on a stipulation or a jury finding supporting that aggravating circumstance justifying the upper term.

　　Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b), to make the middle term the presumptive determinate sentence. (*People v. Lynch* (2024) 16 Cal.5th 730, 742.) Section 1172.75 acknowledges that, during a

8

resentencing pursuant to its provisions, a "court may not impose a sentence exceeding the middle term unless" the "circumstances in aggravation that justify the imposition" of the upper term are either "stipulated to by the defendant" or "found true beyond a reasonable doubt [] by the jury." (§ 1172.75, subd. (d)(4).) However, section 1172.75 explicitly declines to apply this rule when "the [trial] court originally imposed the upper term." (§ 1172.75, subd. (d)(4); *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466-467 (*Brannon-Thompson*); *People v. Mathis* (2025) 111 Cal.App.5th 359, 371-374 (*Mathis*).) That was the case here. Defendant nevertheless urges us to follow *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 328 (*Gonzalez*), which reads section 1172.75 as *not* creating an exemption for sentences that originally imposed the upper term. (*Id.* at p. 330.) Although the resolution of this split of authority is pending before our Supreme Court (see *People v. Eaton*, (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903), we in the interim find the reasoning of *Brannon-Thompson* and *Mathis* more persuasive. We accordingly reject defendant's *Gonzalez*-based challenge to his new sentence.

## II.    Failure to Strike All But One Enhancement

Defendant argues that section 1385, as recently amended, obligated the trial court to strike all but one of his sentencing enhancements.

As amended by Senate Bill No. 81 (2021-2022 Reg. Sess.), section 1385 grants trial courts "the authority" and a simultaneous duty "to strike or dismiss [a sentencing] enhancement" (or, if they prefer, the "additional punishment for that enhancement") if doing so is "in the furtherance of justice." (§ 1385, subds. (b)(1) & (c)(1).) Although this provision makes

9

clear that whether dismissal of an enhancement is "in the furtherance of justice" is a "discretion[ary]" call for the trial court to make (*id.*, subd. (c)(1)–(3)), section 1385 also specifies that the existence of any of nine enumerated "mitigating circumstances" "weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*" (*id.*, subd. (c)(2), italics added).

Although two of section 1385's "mitigating circumstances" are undisputably present here—namely, that (1) "[m]ultiple enhancements are alleged in [this] single case" (§ 1385, subd. (c)(2)(B)) and (2) "[t]he application of an enhancement could result in a sentence of over 20 years" (*id.*, subd. (c)(2)(C))—and although those mitigating circumstances "weigh[] greatly in favor of dismiss[al]" of those enhancements (*id.*, subd. (c)(2)), section 1385 provides that this great weight in favor of dismissal does not apply where a trial court finds that dismissal of the enhancements would "endanger public safety" (*ibid.*). The trial court made such a finding here. (See *People v. Mendoza* (2023) 88 Cal.App.5th 287, 296 (*Mendoza*) [if the trial court finds "that dismissal of the enhancement would endanger public safety," then the court need not consider the listed mitigated circumstances].)

Defendant urges that the plain text of section 1385 mandates a different result; specifically, defendant notes that, as to the two mitigating circumstances at issue here, section 1385 provides that, where "[m]ultiple enhancements are alleged in a single case, . . . all enhancements beyond a single enhancement *shall* be dismissed" (§ 1385, subd. (c)(2)(B), italics added), and that where "[t]he application of an enhancement could result in a sentence of over 20 years, . . . the

10

enhancement *shall* be dismissed" (*id.*, subd. (c)(2)(C), italics added).  Because "shall" is a mandatory word, defendant continues, dismissal of his enhancement is required—even where, as here, a trial court finds that dismissal of the enhancements would not be in the interest of justice and would endanger public safety.  Many courts, as defendant acknowledges, have rejected the precise argument defendant advances here, and we agree with those courts.  (*People v. Mazur* (2023) 97 Cal.App.5th 438, 444-446; *People v. Cota* (2023) 97 Cal.App.5th 318, 335-337; *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1284-1290; *Mendoza, supra,* 88 Cal.App.5th at pp. 290-291; *People v. Anderson* (2023) 88 Cal.App.5th 233, 238-241; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15-21.)

## III.  Misapplication of Section 1385

In addition to making the specific assertion that section 1385 mandates dismissal of all but one enhancement, defendant proffers several other reasons why, in his view, the trial court erred in its analysis of whether to dismiss his various enhancements under section 1385.  We review the exercise of sentencing discretion for an abuse of discretion but recognize that a trial court's reliance on an incorrect legal standard constitutes such an abuse.  (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez II*).)

First, defendant argues the trial court's factual finding that he posed a danger to public safety under section 1385 was not supported by substantial evidence.  We reject this argument. Defendant's recent conduct while in custody—which, as the trial court noted, included a four-on-one group attack in October of 2018, and a three-on-one group attack in April of 2022—supports

11

the court's finding that he "has a propensity for [violence]" and thus poses "a danger to the community."

Second, defendant argues that the trial court applied the wrong test when making its factual finding that he did not pose a danger to public safety. For starters, defendant urges that a trial court's assessment of whether a defendant poses a danger must focus on danger he poses to the public *at the time of his release in the future should his sentence be shortened*, rather than on the danger he poses to the public *at the time of resentencing*. For support, defendant cites *Gonzalez II, supra*, 103 Cal.App.5th at pp. 228-229. *Gonzalez II* is not directly on point, as it dealt with how to assess danger to the public when a defendant is serving an indeterminate sentence and will be later evaluated for dangerousness by the Board of Parole Hearing. (*Id.* at p. 230-231.) But even if we were to apply *Gonzalez II*, the trial court's assessment of the danger defendant poses to the public in this case rested on its subsidiary findings that defendant continued to engage in violent acts while in custody, that those acts evince a propensity for violence, and that this propensity will persist. We do not read the court's remarks that defendant "*remains*" (italics added) and "*continues to pose* a danger to the community" (italics added) to reflect that the trial court limited its analysis to defendant's dangerousness at the time of the resentencing hearing. Defendant next argues that the trial court applied the wrong test for whether his release would endanger public safety because, instead of using the definition in section 1385 itself (namely, that "'[e]ndanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others" (§ 1385, subd. (c)(2))), the trial court seemed to equate endangering public

12

safety with whether there was likelihood defendant would commit a "super strike" felony. Although defendant is correct that the "super strike" formulation is not applicable to section 1385 (*People v. Walker* (2024) 16 Cal.5th 1024, 1029, fn. 2 (*Walker*)), the trial court *also* found that defendant "endangered public safety" using the standard set forth in section 1385 itself and the section 1385 standard is easier to satisfy than the super strike standard the trial court alternatively applied (so any failure of the evidence to meet the higher, "super strike" standard is irrelevant).

Third, defendant argues that our Supreme Court in *Walker*, *supra*, 16 Cal.5th 1024 noted that a trial court would be hard pressed not to dismiss an enhancement in the exercise of its discretion if even a *single* mitigating factor existed. (*Id.* at p. 1038.) Defendant urges that dismissal is accordingly all but mandatory where, as he claims, there are *three* mitigating factors—namely, (1) that applying the enhancements results in a racially discriminatory impact (§ 1385, subd.(c)(2)(A)); (2) that multiple enhancements are imposed (§ 1385, subd.(c)(2)(B)); and (3) that the application of an enhancement could result in a sentence of over 20 years (§ 1385, subd.(c)(2)(C)).[7] Defendant's argument misreads *Walker*. The passage defendant cites from *Walker* addresses the scope of a trial court's discretion not to dismiss an enhancement when the defendant *does not pose a danger to the public*. (*Id.* at p. 1038.) Here, however, the court has found that defendant poses such a danger; as noted above,

---

[7] Defendant argues that there is a *fourth* mitigating factor—namely, that there is an enhancement based on a prior conviction that is over five years old (§ 1385, subd.(c)(2)(H)), but there is no such enhancement at issue here.

that finding itself means that "the court need not consider the listed mitigating circumstances." (*Mendoza, supra*, 88 Cal.App.5th at p. 296.)

Fourth, defendant argues the trial court abdicated its duty to assess whether his release would endanger public safety by deferring to CDCR's opinion on the issue—and, more specifically, on CDCR's failure to recommend defendant for resentencing under a different statute. This argument ignores that the trial court cited CDCR's inaction as one of three factors supporting its finding of defendant's dangerousness, and the remaining factors are sufficient to support the court's overall finding that defendant's release would endanger public safety. Moreover, the statutory scheme that CDCR did not recommend looks to whether resentencing is warranted due to a defendant's "disciplinary record and record of rehabilitation . . . while incarcerated" and whether those facts and others "have reduced the defendant's risk for future violence" (§ 1172.1, subd. (a)(5)); CDCR's failure to seek relief under this statute is relevant evidence that defendant may continue to pose such a risk.

Fifth and finally, defendant argues that the trial court did not respond to every one of his many arguments. But it is not required to do so: "'Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules.'" (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765, quoting *People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322; *People v. Brugman* (2021) 62 Cal.App.5th 608, 637; see Cal. Rules of Court, rule 4.409 [sentencing factors "will be deemed to have been considered unless the record affirmatively reflects otherwise"].) Here, the record does not affirmatively demonstrate that the court applied

14

an incorrect legal standard or declined to consider any relevant factors.

We express no view on how the trial court should exercise its discretion in resentencing defendant.

## DISPOSITION

We strike the two one-year prior prison term enhancements imposed pursuant to section 667.5, subdivision (b), and the $10 administrative fee imposed pursuant to section 1463.07. We remand the matter for the superior court to consider whether defendant's gang enhancement remains legally valid, to calculate his actual credits, and to issue a corrected abstract of judgment. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
KIM (D.)


_____, J.
KUMAR*

_____

* Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15